## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————————

OSCAR YANEZ SANCHEZ,

      Petitioner,

    v.                                        Case No. 2:25-cv-01232-KWR-KBM

KRISTI NOEM, *Secretary*
*of Homeland Security*,
TODD LYONS, *Acting Director,*
*U.S. Immigration and Customs Enforcement*,
MARY DE ANDA-YBARRA, *Director*,
*El Paso ICE Field Office*,
PAMELA BONDI, *Attorney General*,
*U.S. Department of Justice*, and
DORA CASTRO, *Warden*, *Otero County*
*Processing Center*,

      Respondents.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (**Doc. 1**). Having reviewed the parties' pleadings, exhibits, and the relevant law, the Court finds that the motion is well-taken, and therefore, is **GRANTED in part**. Respondents' Motion to Dismiss (**Doc. 9**) is **DENIED**. The Court orders Respondents to hold an individualized bond hearing for Petitioner within **five (5) days** of the entry of this Order.

### BACKGROUND

Oscar Yanez Sanchez ("Petitioner") is a citizen of Honduras and entered the United States without inspection in 2013. **Doc. 1 ¶ 32**. On November 16, 2025, Petitioner was arrested while working on a construction site in Maryland. *Id.* **¶ 34**. Respondents and ICE have detained Petitioner at the Otero County Processing Center in Chaparral, New Mexico. *Id.* ¶ 35. Respondents

agree that Petitioner entered the United States "without being inspected, admitted, or paroled by an immigration official." **Doc. 9 at 2**; **Doc. 9-1 at 3**. Petitioner seeks habeas, injunctive, and declaratory relief. **Doc. 1 at 14**.

On September 5, 2025, the Board of Immigration Appeals decided that immigration judges lack authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (BIA Sep. 5, 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). Respondents have classified Petitioner's detention as mandatory under 8 U.S.C. § 1225(b)(2)(A). **Doc. 9 at 7–8**. To date, Petitioner has not been afforded a bond hearing.

On December 12, 2025, the Court ordered Respondents to answer the Petition within thirty days of service of the Petition and Order to Answer. **Doc. 2 at 2**. Petitioner filed a certificate of service, stating that the Petition was served by mail on December 23, 2025. **Doc. 8 at 1**. On January 28, 2026, Respondents had not yet filed an answer, and the Court ordered Respondents to file an answer within seven days. **Doc. 8 at 1**. The Court noted that, should Respondents file a motion to dismiss, it would be construed as an answer. ***Id.*** Respondents filed their Motion to Dismiss on February 4, 2026. **Doc. 9**. Petitioner filed his Response on February 11, 2026. **Doc. 10**. Construing Respondents' Motion to Dismiss as an answer, the Petition is fully briefed and ready for decision.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C.

§ 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## DISCUSSION

Petitioner brings this Petition pursuant to 28 U.S.C. § 2241. **Doc. 1-1 at 1**. He contends that he is improperly detained pursuant to 8 U.S.C. § 1225(b)(2), and that he is entitled to a bond hearing or immediate release pursuant to 8 U.S.C. § 1226(a). **Doc. 1 at 14**. Petitioner also requests that the Court enjoin his transfer outside the district pending this litigation, enjoin Respondents from "re-arresting Petitioner subject to § 1225(b)(2)," and award Petitioner his costs from suit. *Id.* The Court finds that Petitioner is subject to the discretionary detention provisions of § 1226(a), and therefore, he is entitled to a bond hearing before an immigration judge.

### I.   __The Court has jurisdiction over this matter.__

Respondents contend that this Court lacks subject matter jurisdiction. **Doc. 9 at 2**. Respondents argue that the following provisions of 8 U.S.C. § 1252 bar the Court from hearing this Petition: § 1252(e)(3), § 1252(g), and § 1252(b)(9). *Id.* The Court addresses each argument in turn.

Respondents argue that, since Petitioner "seeks judicial review of a written policy or guideline implementing § 1225(b)," § 1252(e)(3) precludes this Court's review. *Id.* **at 3**. The Court disagrees. Petitioner does not challenge the legality or implementation of § 1225(b). Rather, Petitioner challenges the legality of his detention without a bond hearing. *See* **Doc. 1 at 2**. Petitioner argues that his detention is governed by § 1226(a), not § 1225(b)(2). *Id.* Petitioner's argument does not challenge the legality of any statute, regulation, policy, or procedure as would be necessary for § 1252(e)(3) to apply. *See* § 1252(e)(3) (limiting review to "whether such section,

or any regulation issued to implement such section, is constitutional," or "whether such regulation . . . written policy directive, written policy guideline, or written procedure . . . is not consistent with applicable provisions of this subchapter or is otherwise in violation of law"). Further, Petitioner contends, and the Court agrees, that his detention is governed by § 1226(a). Since § 1252(e)(3) expressly deals with "[j]udicial review of determinations under section 1225(b)," § 1252(e)(3) does not apply here. Therefore, the Court finds that § 1252(e)(3) does not deprive the Court of jurisdiction.

Respondents contend that § 1252(g) bars review of Petitioner's claims. **Doc. 9 at 3–4**. Section 1252(g) bars judicial review of "any cause or claim" by a noncitizen "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." The Supreme Court has limited the reach of § 1252(g) to the three actions explicitly mentioned and has rejected broad readings that would cover the "universe of deportation claims." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Petitioner does not challenge the decision to commence removal proceedings. Rather, he challenges Respondents' position that he is detained pursuant to § 1225(b)(2) and maintains that he is entitled to a bond hearing pursuant to § 1226(a). **Doc. 1 at 2**. Since Petitioner does not challenge the decision to commence proceedings, adjudicate cases, or execute a removal order, the Court finds that § 1252(g) does not bar review.

Respondents argue that § 1252(a)(5) and § 1252(b)(9) deprive this Court from reviewing the decision to detain Petitioner. **Doc. 9 at 6–7**. The Court disagrees. Under § 1252(a)(5), "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal," and § 1252(b)(9) prohibits "judicial review of

4

all questions of law . . . arising from any action taken or proceeding brought to remove an alien from the United States," except for judicial review of a final order of removal. Petitioner does not challenge his removal proceedings; he challenges his denial of a bond hearing pursuant to § 1226(a). Respondents' reading of § 1252(a)(5) and (b)(9) impermissibly expands the phrase "arising from any action." *See Jennings*, 583 U.S. at 293 (determining that interpreting § 1252(b)(9) to apply to any injury that would not have occurred but for a noncitizen's detention status would lead to "absurd" results); *see also Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) ("A claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings."). Petitioner does not seek "review of an order of removal; [he is] not challenging the decision to detain [him] in the first place or to seek removal; and [he is] not even challenging any part of the process by which [his] removability will be determined." *Jennings*, 583 U.S. at 294 (citation modified). Petitioner seeks a determination that he is detained pursuant to § 1226(a) and entitled to a bond hearing. **Doc. 1 at 2**. Therefore, the Court finds that § 1252(a)(5) and (b)(9) do not deprive the Court of jurisdiction.

In sum, the Court finds that none of the provisions cited by Respondents deprive it of jurisdiction.[1]

## II.  <u>Administrative exhaustion is futile.</u>

Respondents argue that Petitioner failed to exhaust his administrative remedies and exhaustion is not futile. **Doc. 9 at 16–17**. Petitioner contends that it is futile to request a bond

---

[1] Petitioner argues that *Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025) is persuasive authority, **Doc. 10 at 18–20**, and Respondents contend that *Maldonado Bautista* is inapplicable here, **Doc. 9 at 18–20**. *Maldonado Bautista* does not provide Petitioner habeas relief since he is confined beyond the boundaries of the Central District of California. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (noting that language of the habeas statute confirms "the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement").

hearing given the position of the BIA in *Hurtado*, 29 I. & N. Dec. 216. **Doc. 1 at 12–13**. The Court agrees.

The Immigration and Nationality Act ("INA") and § 2241 do not expressly require administrative exhaustion for immigration detainees that challenge their detention. *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). But, for criminal detainees, the Tenth Circuit requires administrative exhaustion for § 2241 habeas petitions. *Garza v. Davis*, 596 F.3d 1198, 1203–04 (10th Cir. 2010). A "narrow exception to the exhaustion requirement" exists when "a petitioner can demonstrate that exhaustion is futile." *Id.*

Respondents, in light of *Hurtado*, take the position that an immigration judge lacks the authority or jurisdiction to grant Petitioner a bond hearing. *See* **Doc. 9 at 8**. *Hurtado* is binding on immigration courts, and Respondents do not contend that there is any prospect of the BIA overturning its decision. In light of *Hurtado*, Petitioner contends that it would be futile to request a bond from an immigration judge. **Doc. 1 at 12–13**. The Court agrees that requesting a bond hearing from an immigration judge, in light of *Hurtado*, would be futile. *See Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-010131-KG-JFR, 2025 WL 3187432, at *4 (D.N.M. Nov. 14, 2025) ("Under *Hurtado*, Immigration Judges . . . lack jurisdiction to provide § 1226(a) bond hearings to individuals in [Petitioner's] position, rendering any attempt to seek relief directly from the agency futile."). Accordingly, the Court finds that administrative exhaustion is futile considering Respondents' position that immigration judges lack the authority or jurisdiction to issue a bond to Petitioner.[2]

---

[2] In the alternative, the Court finds that the prudential factors warrant not requiring exhaustion in this case. "[S]ound judicial discretion governs" where Congress has "not clearly required exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Exhaustion is favored when (1) the "action under review involves exercise of the agency's discretionary power," and (2) the agency procedure at issue allows for "the agency to apply its special expertise." *Id.* at 145. An individual's

## III.   Discretionary detention pursuant to § 1226(a) applies to Petitioner, not mandatory detention pursuant to § 1225(b)(2).

This Petition turns on whether § 1225(b)(2) or § 1226(a) governs Petitioner's detention. Respondents argue that § 1225(b)(2) governs Petitioner's detention because it applies to any noncitizen present in the United States without admission, pending a removal decision. *See* **Doc. 9 at 8–10**. Petitioner contends that § 1226(a) governs his detention because he is not "an applicant for admission," "seeking admission," or an "arriving alien" subject to § 1225(b)(1) or (b)(2). **Doc. 1 at 13**. The Court finds that "seeking admission" cannot be interpreted to include Petitioner, who has lived in the United States for twelve years. ***Id.* at 1**. Thus, Petitioner is entitled to a bond hearing pursuant to § 1226(a).

When interpreting a statute, courts first "examine the statute's plain text" and "[a]bsent ambiguity, [the] analysis ends there." *United States v. Koerber*, 10 F.4th 1083, 1112 (10th Cir. 2021). Should the analysis continue, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the 'broader context of the statute as a whole' when ascertaining the meaning of a particular provision."). Courts also consider traditional canons of statutory interpretation. *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011).

---

interests weigh heavily against requiring exhaustion in the following three circumstances: (1) when the administrative remedy "may occasion undue prejudice to subsequent assertion of a court action"; (2) when there is doubt that the agency is "empowered to grant effective relief"; and (3) when an administrative body is "shown to be biased" or shown to have predetermined the issue before it." *Id.* at 146–49. *Hurtado* stands precisely for the proposition that immigrations judges are not "empowered to grant" the relief Petitioner requests. *See* 29 I. & N. Dec. at 225 ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens . . . who are present in the United States without admission."). *Hurtado* also demonstrates that the BIA has predetermined the issue before it. Respondents do not argue that the BIA or an immigration judge will reverse or ignore *Hurtado*. Therefore, the prudential factors warrant not requiring exhaustion here.

Generally, the Court considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, only if the statutory language is ambiguous. *See, e.g.*, *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008) ("[I]t is a longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute.").

Under the INA, two statutes generally govern a noncitizen's detention pending a final order of removal: §§ 1225 and 1226. *See Jennings*, 583 U.S. 281, 289. Section 1225, which mandates detention and does not afford a bond hearing, applies when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Section 1226 provides that a noncitizen "may be arrested and detained" pending a removal decision. § 1226(a). Under § 1226(a), the Attorney General may detain the arrested noncitizen, or release them on bond or conditional parole. Section 1226(c) mandates detention for a noncitizen that is (1) present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General and (2) "is charged with, is arrested for, is convicted of, admits having committed" certain criminal acts. § 1226(c)(1)(E).

In sum, immigration law authorizes the Government to "detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Jennings*, 583 U.S. at 289). Thus, for Petitioner's detention to be governed by § 1225(b)(2), the Court must find that Petitioner is (1) an "applicant for admission," (2) who is "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted."

### A.  Petitioner qualifies as an "applicant for admission."

Petitioner would likely be considered an "applicant for admission" under the statute. The phrase "applicant for admission" is statutorily defined as "an alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." § 1225(a)(1). "Admission" and "admitted" mean, concerning the noncitizen, "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Petitioner has been present in the United States for the past twelve years, and he was likely not "encountered" when he entered the United States. *See* **Doc. 1 at 1, 10**. It appears that Petitioner did not enter the United States "after inspection and authorization by an immigration officer," and thus, Petitioner can be categorized as an "applicant for admission."

### B.  Petitioner is not "seeking admission."

The question of whether § 1225(b)(2) or § 1226(a) applies turns on whether Petitioner can be deemed a noncitizen "seeking admission." *See* § 1225(b)(2)(A). Respondents argue that a plain reading of § 1225 "reveals that a noncitizen without authorization is not admitted." **Doc. 9 at 8**. Petitioner contends that he is not "seeking admission" based on a reading of the plain text, and the phrase "seeking admission" must mean something different than "applicant for admission" to avoid surplusage. **Doc. 10 at 9**. After a plain reading of the statute, the Court finds that Petitioner, who has lived in the United States for twelve years, is not "seeking admission."[3] *Id.*

---

[3] Petitioner acknowledges the Fifth Circuit's contrary reading of the plain text of § 1225(b)(2)(A) in which the court focuses on the terms "applying" and "seeking." *See Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *4 (5th Cir. 2026). The Fifth Circuit contends that when "a person applies for something, they are necessarily seeking it." *Id.* In support of this contention, the Fifth Circuit points to the dictionary definitions of "apply" and "seek." *Id.* The Fifth Circuit

The Court begins with the plain text of the phrase "seeking admission." *See Koerber*, 10 F.4th at 1112. Since "seeking" is statutorily undefined, the Court will first consider the word "admission." "Admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "Entry" is statutorily undefined. Respondents do not assert that the word "entry" has any unusual, technical meaning, and therefore, the Court will apply its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). "Entry" ordinarily means "[t]he action or an act of entering a place, area, building, etc." *Entry*, Oxford English Dictionary Online, https://www.oed.com/dictionary/entry_n?tab=meaning_and_use#5515547 (last visited Feb. 17, 2026); *see also Entry*, *Black's Law Dictionary* (12th ed. 2024) ("*Immigration*. Any entrance of an alien into the United States, whether voluntary or involuntary."). Thus, the

---

posits that "apply" means "[t]o make a formal request (to someone for something) and that "seek" means "to request, ask for." *See id.* (citing Webster's New World College Dictionary 69, 1299 (4th ed.)). This analysis builds upon a foundational oversight. In finding that there is "no material disjunction . . . between the concept of 'applying' for something and 'seeking' something," the Fifth Circuit discounts the fact that the terms "applicant for admission" and "admission" are statutorily defined and "seeking" is not. *Id.* (citation omitted); *see* § 1225(a)(1) (defining "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States"); *see also* § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."). The Fifth Circuit reduces the technical phrases "applicant for admission" and "admission" to the ordinary word "apply." Only after the statutorily defined phrases are substituted for the ordinary term does the comparing of definitions commence. Not only does this substitution not afford the appropriate weight to the statutory definitions of "applicant for admission" and "admission," but such substitution damages the very foundation of the court's textual analysis. Thus, the Court is not persuaded by the Fifth Circuit's reading given that its analysis impermissibly substitutes statutorily defined terms for an ordinary meaning. *See Feliciano v. Dep't of Transp.*, 605 U.S. 38, 50 n.4 (2025) (noting that courts "must adhere [to an express statutory definition,] even if it varies from a term's ordinary meaning" (citation modified)).

word "admission," as used in § 1225(b)(2)(A), refers to a noncitizen's lawful act of physically

entering the United States after inspection and authorization by an immigration officer.

Turning to the statutorily undefined word "seeking," in this context, the ordinary meaning

of "seeking" means trying to obtain something or trying to bring about or effect. *Seek*, Oxford

English Dictionary Online, https://www.oed.com/dictionary/seek_v#23722800 (last visited Feb.

13, 2026). In choosing the present participle "seeking," courts should give effect to Congress's

verb choice and find that "seeking" signals present and continuous action.[4] *Carr v. United States*,

560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress'

choice of verb tense to ascertain a statute's temporal reach."); *Present Participle*, Merriam-Webster

---

[4] The Fifth Circuit contends that the present tense does not require some form of "present, affirmative action." *Buenrostro-Mendez*, 2026 WL 323330, at *5. It supports its conclusion by equating a "college applicant" to an "applicant for admission," repeating its juxtaposition between an ordinary term and a statutorily defined term. *Id.* An "applicant for admission" is statutorily defined as "an alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." § 1225(a)(1). A "college applicant" is not analogous to the statutorily defined "applicant for admission," as the college applicant "clicks 'submit' on her application," *see Buenrostro-Mendez*, 2026 WL 323330, at *5, and an "applicant for admission" need only "arrive in the United States," see § 1225(a)(1). A local resident who steps foot on a college campus does not become a "college applicant" in the same way a noncitizen who is present in the United States without being admitted becomes an "applicant for admission." The Fifth Circuit's own "college applicant" analogy demonstrates the present, affirmative action that is required by the present participle "seeking." The Fifth Circuit posits that once "the applicant clicks 'submit' on her application" she is "ordinarily understood to be seeking admission as long as her application is pending." *Buenrostro-Mendez*, 2026 WL 323330, at *5. Once she "clicks 'submit,'" the applicant has taken the affirmative step that renders her "seeking admission" under the ordinary meaning of "admission." The statutorily defined "admission" indicates that a noncitizen would need to take an affirmative step toward achieving "lawful entry . . . after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). The Court is not persuaded that a noncitizen who takes no affirmative action to achieve "lawful entry . . . after inspection and authorization" is deemed "seeking admission." Petitioner has done nothing close to submitting an application. Rather, Petitioner is positioned much more closely to the unadmitted individual sitting in a lecture hall unbeknownst to the administration—hardly a college applicant.

Dictionary Online, https://www.merriam-webster.com/dictionary/present%20participle (last visited Feb. 13, 2026).

Therefore, the Court finds that the plain reading of the phrase "seeking admission" demonstrates that § 1225(b)(2)(A) applies to noncitizens who are presently trying to lawfully and physically enter the United States. Section 1225(b)(2)(A) does not apply to noncitizens, like Petitioner, who have lived in the United States for years and are not presently seeking lawful entry into the United States.

Respondents, citing several cases including *Hurtado*, 29 I. & N. Dec. 216, appear to argue that if one is an "applicant for admission" they must be "seeking admission" as well.[5] *See* **Doc. 9 at 9–10**. For several reasons, in addition to those already discussed, the Court declines to adopt Respondents' position that the phrase "applicant for admission" is equivalent to, or includes the phrase, "seeking admission."

If the Court were to accept Respondents' interpretation, the phrase "seeking admission" would be rendered superfluous, "violating one of the cardinal rules of statutory construction." *Castañon-Nava*, 161 F.4th at 1061. Courts are to presume that an interpretation of a provision is incorrect if it "would render another provision superfluous." *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)). This presumption is "strongest when an interpretation would render superfluous another part of the same statutory scheme," as would occur here if the Court adopts Respondents' interpretation. *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013).

Further, another section in § 1225 provides that "[a]ll aliens . . . who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States

---

[5] *Hurtado* is not binding on this Court. *Hurtado* carries only the "power to persuade." *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024).

shall be inspected by immigration officers." *See* § 1225(a)(3) (citation modified). The Supreme Court has noted that the word "or" is "almost always disjunctive, that is, the words it connects are to be given separate meanings." *United States v. Woods*, 571 U.S. 31, 45 (2013) (citation modified). Additionally, the phrase "or otherwise" signals that the phrase "applicants for admission" has a different meaning than "seeking admission." *Or Otherwise*, Oxford English Dictionary Online, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058328 (last visited Feb. 13, 2026) ("In another way or ways; in a different manner; by other means; in other words; differently."). Therefore, a plain reading of § 1225(a)(3) indicates that the phrases "applicants for admission" and "seeking admission," as used throughout § 1225, do not have the same meaning.

Respondents' interpretation would render recent amendments to § 1226(c) superfluous. As amended in 2025, § 1226(c)(1)(E) requires detention for a noncitizen who is (1) inadmissible as an alien present in the United States without being admitted or paroled, and (2) "is charged with, arrested for, convicted of, or admits" to committing certain crimes. Respondents' interpretation would require every noncitizen that is present in the country without being admitted or paroled be detained under § 1225(b)(2)(A). Such an interpretation would render the recent § 1226(c)(1)(E) amendment superfluous in that detention would be required regardless of the noncitizen's criminal involvement.

The Supreme Court, in dicta, has recognized that § 1225(b) generally applies "to aliens seeking entry into the United States" and that § 1226 "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 297, 303. The *Jennings* Court further noted that § 1226(a) creates a default rule for noncitizens present in the United States "by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also permitting "the Attorney General to release those aliens on bond." *Id.* at

303. Thus, the Supreme Court's construction of §§ 1225(b) and 1226(a) align with this Court's reading of the phrases "applicant for admission" and "seeking admission."

Here, Petitioner was not "encountered" when he entered the United States. **Doc. 1 at 10**. Petitioner had lived in the United States for twelve years before he was arrested. ***Id.* at 1**. Neither Petitioner nor Respondents present facts demonstrating that Petitioner was "seeking admission" at the time of his arrest. Rather, Petitioner claims that he was arrested while working on a construction site in Maryland. ***Id.* at 11**. Nothing indicates that Petitioner was actively seeking lawful and physical entry to the United States after inspection and authorization by an immigration officer at the time of his arrest. Accordingly, the mandatory detention provision under § 1225(b)(2)(A) does not apply to Petitioner and § 1226(a) governs Petitioner's detention.[6]

## IV.    Petitioner is entitled to bond hearing.

Petitioner argues that he is entitled to a bond hearing under § 1226(a) and due process. **Doc. 1 at 13**. Considering the Court's finding that § 1226(a) governs Petitioner's detention, the Court agrees with Petitioner.

Federal district courts have broad equitable powers in ordering habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas

---

[6] Respondents argue that finding that § 1226(a) governs Petitioner's detention "rewards aliens who unlawfully enter the United States without inspection" and "evade apprehension for a number of years." **Doc. 9 at 9**. The Court rests its decision on a plain reading of the text of § 1225(b), and thus, the "analysis ends there." *See Koerber*, 10 F.4th at 1112. Additionally, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court has repeatedly affirmed this distinction in treatment of noncitizens who have physically entered the United States and those who have not. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

14

corpus." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (citation modified). In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243.

While § 1226(e) restricts some review, it does not expressly prohibit habeas review of detention decisions. Respondents have the discretion to detain a noncitizen, release the noncitizen on bond, or place them on parole. § 1226(a). Under § 1226(e), a release or bond decision is discretionary. While Respondents retain this discretion, Petitioner is entitled to an individualized bond hearing before a neutral immigration judge pursuant to § 1226(a). Accordingly, given the Court's broad discretion to craft appropriate habeas relief, the Court orders Respondents to hold a bond hearing within the next **five (5) days**. *See Clayton v. Jones*, 700 F.3d 435, 443 (10th Cir. 2012) (noting that district courts have "broad discretion" to craft habeas relief).

### V.    The Court need not rule on Petitioner's remaining claim.

Petitioner's second claim for relief is that his detention without a bond hearing violates his rights without due process of law. **Doc. 1 at 13**. Petitioner also requests that the Court order his immediate release, enjoin Respondents from transferring him, and enjoin future arrests under § 1225. *Id.* **at 14**. Since the Court grants Petitioner habeas relief, the Court declines to address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address additional habeas claim because further relief would be cumulative of the relief already granted); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting relief on one claim).

## VI.    <u>Costs and fees under the EAJA.</u>

Petitioner requests that he be awarded "his costs of suit." **Doc. 1 at 14**. Respondents contend that his request for fees is without legal authority and premature. **Doc. 9 at 6**. In light of recent Tenth Circuit precedent, the Court finds that it may consider Petitioner's request for costs provided that Petitioner follows proper EAJA procedure.

The EAJA provides for the following procedure:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Tenth Circuit recently held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the petitioner prevails, (2) the Government's position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting § 2412(d)(1)(A)). While fees are authorized, the EAJA requires that Petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees or other expenses," and an allegation demonstrating that "the position of the United States was not substantially justified." § 2412(d)(1)(A), (B). Upon filing this application, the Government must justify its position in any underlying proceedings and district court litigation. *See Hackett*, 475 F.3d at 1170.

Since the Court grants Petitioner habeas relief, should Petitioner pursue costs and fees, he is instructed to file an EAJA application following the appropriate procedure.

**CONCLUSION**

In sum, the Court finds that Petitioner's detention is governed by § 1226(a), not § 1225(b)(2)(A). Thus, the Petition (Doc. 1) is granted in part. The Court directs Respondents to arrange an individualized bond hearing pursuant to § 1226(a) for Petitioner before an immigration judge within **five (5) days** of the entry of this Order. **Respondents shall not deny Petitioner bond or parole on the basis that § 1225(b) requires mandatory detention**. The parties are ordered to file a status report within **seven (7) days** of the entry of this Order. The Court will enter a separate judgment.[7]

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED in part** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Respondents' Motion to Dismiss (Doc. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that Respondents shall provide Petitioner a bond hearing before an immigration judge pursuant to § 1226(a) within **five (5) days** of the entry of this Order.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

---

[7] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).